_____

SHARON MCNAMEE,

                            Plaintiff                          DECISION AND ORDER

-vs-

                                                       10-CV-6508 CJS

STARBUCKS COFFEE COMPANY,

                            Defendant

_____

## APPEARANCES

| | |
|---|---|
| *For Plaintiff:* | Sharon McNamee, *pro se* |
| | 200 Crestwood Boulevard |
| | Gates, New York 14624 |
| | |
| *For Defendant:* | Margaret A. Clemens, Esq. |
| | Littler Mendelson, P.C. |
| | 400 Linden Oaks, Suite 110 |
| | Rochester, New York 14625 |

## INTRODUCTION

This is an action in which Sharon McNamee ("Plaintiff") alleges that her former employer, Starbucks Coffee Company ("Defendant"), discriminated against her, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*.[1] Now before the Court is Defendant's motion for summary judgment (Docket No. [#51]). For the reasons that follow, the application is granted.

---

[1] As discussed further below, on the form complaint that Plaintiff used to commence this action, she also checked a box indicating that she was suing under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, though the Complaint does not plausibly state such a claim. Plaintiff has now abandoned any claim under the ADA, and no such claim was administratively exhausted in any event.

BACKGROUND

Unless otherwise noted, the following are the facts of this case, viewed in the light most favorable to Plaintiff. Defendant operates a well-known chain of coffee shops. In 2004, Plaintiff began working for Defendant as a "coffee barista" in the State of Florida. In 2007 Plaintiff was promoted to Manager of a Starbucks shop in Naples, Florida. During this period of her employment with Defendant, Plaintiff received "consistent merit increases and promotions by meeting performance objectives." Pl. Rule 56.1 Stmt. ¶ 17.

On April 1, 2008, Plaintiff made a lateral transfer to become the Manager of a Starbucks shop in Gates, New York. At that time, Plaintiff was approximately 44 years of age. Pl. Dep. at p. 60. Plaintiff's District Manager and immediate supervisor was Ron Aylward ("Aylward"). In or about July 2008, "as a result of a decline in consumer confidence and a reduction in comparable store sales," Defendant "closed more than 600 stores and laid off over 6,000 employees." Pl. Rule 56.1 Stmt. ¶ 9. At that time, Defendant terminated Aylward and replaced him with Joseph Rizzo ("Rizzo"), who was younger than Aylward. However, Plaintiff remained as the manager of the Gates location.

Plaintiff did not have a good working relationship with Rizzo. Sometime during 2008, Plaintiff contacted Rizzo's supervisor, Zeta Smith ("Smith"), and expressed her "concerns about [Rizzo's] leadership." Pl. Dep. at pp. 36-37, 89-90. Plaintiff again complained to Smith about Rizzo after Rizzo made certain changes to the work schedule at Plaintiff's shop without consulting her. *Id*. at pp. 93-97. Plaintiff also made complaints about Rizzo's management style directly to him. *Id*. at p. 75. On one occasion, Plaintiff had a dispute with Rizzo because he told her that she could not have

a toaster in her shop pursuant to company rules, and rather than remove the toaster, Plaintiff contacted a former supervisor in Florida and asked for an explanation for why she had been allowed to have a toaster at the Florida shop. Pl. Dep. at pp. 75-83. Upon learning that Plaintiff had contacted the former supervisor, Rizzo told Plaintiff that she was being insubordinate. *Id*. Plaintiff eventually removed the toaster after Rizzo gave her a direct order to do so. *Id*.

In or about March 2009, Defendant transferred the female manager of another Rochester-area shop, Jacqueline Melia ("Melia"), to a "lower sale volume store," and replaced her with a younger female employee. Pl. Rule 56.1 Stmt. ¶ 14. Plaintiff contends that such transfer was discriminatory, but she admits that she does not know why Melia was "demoted." Pl. Dep. at pp. 208-209. However, Melia's performance evaluation for 2009 listed a high number of areas in which she had problems, including the cleanliness of her shop, and gave her an overall rating of "must improve." Pl. Rule 56.1 Stmt., Ex. T.

In April 2009, Rizzo gave Plaintiff a six-month performance evaluation, which indicated that she "met expectations." Pl. Rule 56.1 Stmt. ¶ 15. However, Rizzo's review indicated various areas in which Plaintiff needed to improve. In that regard, a few months earlier Rizzo had used one of Defendant's form questionnaires to poll the nine employees who were being supervised by Plaintiff, and they expressed dissatisfaction with her. *See*, Rizzo Aff. ¶ ¶ 6-7 and Ex. A. For example, none of the nine agreed that Plaintiff was "trustworthy" or that she "achieve[d] results." Rizzo Aff. at Ex. A. Rizzo had discussed the survey with Plaintiff, and she had agreed that she needed to improve her performance. *Id*. at ¶ 7.

In April 2009, Plaintiff became interested in making a lateral transfer to a Starbucks shop in Newport, Rhode Island. After expressing her interest in the position, Plaintiff was contacted by the hiring district manager for Rhode Island, Alida Kronsberg ("Kronsberg"), who explained the application process and indicated that Plaintiff would eventually be interviewed by a five-person panel. According to Plaintiff, in order to make such a lateral transfer, she needed her District Manager, Rizzo, to give his approval and to provide her with a letter of recommendation. Plaintiff maintains that Rizzo permitted her to apply for the Rhode Island position and indicated that he would provide her with letter of recommendation. Plaintiff also asked one of her former District Managers, Sheryl Oltmans ("Oltmans"), a female, to provide a letter of recommendation. Plaintiff contends that Rizzo spoke with Kronsberg about her by telephone, but that neither Rizzo nor Oltmans sent Kronsberg a written letter of recommendation.[2] A few days after speaking with Rizzo, Kronsberg conducted a telephone interview with Plaintiff. Kronsberg told Plaintiff that she would not be interviewed by the five-person panel, and that she was not being selected for the Rhode Island position. Starbucks instead hired a female who was under age forty. However, according to Kronsberg, at the time she made that decision she did not know the candidates' ages.

Kronsberg indicates that she made the hiring decision based on her perception of Plaintiff's qualifications, and not on Plaintiff's age or gender. In that regard, Kronsberg states that she told Rizzo that the position for which Plaintiff was being considered involved certain "complexities," and Rizzo indicated that he did not think Plaintiff was "ready to take on a store with [those] types of complexities." Aff. of Lida Walusiak

---

[2]Rizzo indicates that he provided an oral recommendation, and that he never provided written recommendations for any of his employees. Rizzo Aff. at ¶ 10.

(Krongsberg) at ¶ 11.  Kronsberg further states that apart from anything that Rizzo told

her, Plaintiff's answers to her questions indicated that Plaintiff was not a good candidate

for the Rhode Island managerial position.  *Id.* at ¶ par 6-7 ("Based on Plaintiff's

responses to my questions, I did not believe that it was within Plaintiff's ability to

consistently hold employees accountable for meeting Starbucks' standards. . . .  I felt

she did not use corrective action as a tool to maintain and implement Starbucks'

standards and help employees understand what is expected of them.  I also felt that

Plaintiff had difficulty managing her direct reports and would opt to transfer an employee

as opposed to working to improve the employee's behavior. . . .  I did not have similar

concerns with the two female employees whom I recommended for the next step in the

process.").  In addition, Plaintiff admits that she and Kronsberg discussed the fact that

the Gates shop, which Plaintiff was managing, "wasn't producing financially," and was

"$50,000.00 in the hole." Pl. Dep. at pp. 180-181.

In May 2009, "as a result of Starbuck's downturn in business and corporate-wide

restructuring," Defendant closed the Gates shop that Plaintiff managed. Pl. Rule 56.1

Stmt. ¶ 20.  At that time, Rizzo was still Plaintiff's supervisor.  Rizzo terminated certain

employees at that time, some of whom were female or over the age of forty.  For

example, a female manager, Kathleen Amico ("Amico"), was terminated and replaced by

a younger female.  Rizzo contends, though, that in connection with this restructuring, he

merely ranked store managers based on age-neutral and gender-neutral factors, and

terminated the managers with the lowest rankings. *See*, Rizzo Aff. at ¶ 13.[3]  Rizzo did

---

[3]In almost every instance in which an older employee was replaced by a younger person, the
younger employee was already earning a higher salary coming in to the position. *See*, Pl. Rule 56.1 Stmt.
at ¶ ¶ 14, 21, 27-30.

not terminate Plaintiff, but instead, transferred her to the position of Manager of the Starbucks shop at the Marketplace Mall in Henrietta, New York. As a result of that transfer, Rizzo no longer supervised Plaintiff. Plaintiff's new District Manager was Charles Robbins ("Robbins").

Defendant indicates that Plaintiff's performance problems continued at the Marketplace Mall location. Varino Aff. ¶ 9. For example, several employees complained directly to Robbins about Plaintiff's management style. *See*, Varino Aff. ¶ 9 and Ex. G. One employee, after receiving a negative performance review from Plaintiff, stated that the Marketplace Mall location had declined since Plaintiff's arrival. *Id*. ("We are losing customers left and right, or morale is at an all-time low, and our staff in general has turned into a revolving door. Since Sharon's arrival, we have lost 3 partners, and will soon lose more."). However, Plaintiff contends that Robbins never told her that he was dissatisfied with her job performance.

In August 2009, Plaintiff became interested in applying for a lateral transfer to a Starbucks shop in Massachusetts. It is undisputed that under Starbucks' procedures, in order to be eligible for such a transfer, store managers "must be performing at 'Meets Expectation' level or better, as determined by the partner's [employee's] manager."). Varino Aff. Ex. H, P1191. Robbins told Plaintiff that he did not think that their Regional Director, Zeta Smith ("Smith"), a forty-year-old female, would allow Plaintiff to transfer to Massachusetts, because of the problems that Plaintiff had with Rizzo at the Gates shop. Pl. Dep. at p. 130 (Robbins referred to the fact that Plaintiff and Rizzo had "gotten off on the wrong foot."). Subsequently, Smith refused to grant Plaintiff permission to interview for the Massachusetts position.

Plaintiff maintains that such decision violated Defendant's policies, since her last performance review had indicated that she "met expectations," and Robbins had not expressed "any concerns" about her performance. However, Defendant maintains that Plaintiff's performance at that time was not satisfactory, for the reasons already mentioned. *See*, Aff. of Joyce Varino at ¶ 11 ("At the time of her request to transfer, Plaintiff was not meeting minimum performance expectations as determined by her manager, and thus, she was ineligible to apply.").

In August 2009, immediately after denying Plaintiff's request to apply for the Massachusett's position, Defendant placed her on a 90-day performance improvement plan ("PIP"). The PIP indicated that Plaintiff's "current performance rating" was "MI," meaning "must improve," and that she had to improve her performance in specified areas within 90 days, or else her employment would be terminated. Varino Aff. Ex. I.

The PIP listed specific examples where Plaintiff's managerial skills were deficient, many of them involving her interactions with her subordinates. *Id*. For example, the PIP listed several particular instances where Plaintiff had difficulty with her staff, some of which pertained to the Gates location, and some of which pertained to the Marketplace Mall location. Varino Aff. Ex. I. (SBUX 0159-0160). Similarly, the PIP indicated that Plaintiff "must improve" in certain areas pertaining to her business skills, citing examples from both the Gates and Marketplace Mall shops. *Id*. (SBUX 0161).

Plaintiff indicates that it was Robbins' idea to place her on the PIP, because he wanted to help her improve her performance so that she could be in a position to transfer at a later time. *See*, Pl. Dep. at pp. 192-193. In that regard, Plaintiff

acknowledges that Robbins, who she described as a "marvelous"[4] supervisor, specifically told her that he would prepare the PIP in order to help her. *Id*. at 193. At her deposition, Plaintiff reiterated that Robbins was a "good," "encouraging" and "supportive" supervisor. Pl. Dep. at pp. 127. Moreover, Plaintiff initially did not object to the idea of receiving a PIP. Plaintiff's attitude, though, changed when she learned that the standard PIP contained a provision that her employment would be terminated if her performance did not improve within ninety days.

The PIP indicated that it was authored by Robbins. Varino Aff. Ex. I. In that regard, the record indicates that Robbins sought input from Smith regarding the contents of the PIP.[5] The record also indicates that Rizzo was involved in drafting the PIP. On this point, Plaintiff suspects that Rizzo had a personal discriminatory animus toward her, and that when the Gates shop closed several months earlier, Rizzo chose not to terminate her employment at that time, and transferred her to the Marketplace Mall location, because he intended to terminate her later. Plaintiff, though, has not produced any evidence that Rizzo actually had such a plan. Moreover, the PIP did not terminate Plaintiff's employment.

The issuance of the PIP coincided with Robbins' resignation from Starbucks, on or about August 18, 2009, and the arrival of a new District Manager, Colin Janick ("Janick").

---

[4]When Robbins announced that he was resigning from Starbucks at around the same time the PIP was issued, in August 2009, Plaintiff indicated, in an email to him, that he had been a "wonderful" supervisor. Varino Aff., Ex. F ("I'm sorry I was only able to work for you for such a short time. You've been wonderful and I appreciate all your support over the last few months.").

[5]Despite the evidence of Robbins' involvement in preparing the PIP, Plaintiff suggested at her deposition that Robbins may not have had any role in prepareing the PIP. *See*, Pl. Dep. at pp. 317-318.

8

After receiving the PIP, Plaintiff complained to Defendant's human resources office.  Plaintiff stated that she should have been given corrective feedback sooner, which might have avoided the need for a PIP. *See*, Varino Aff. Ex. K.  Plaintiff also disagreed with some of the negative statements about her. *Id*.  In response, Defendant's Northeast Director of Human Resources, Beth Wilkinson ("Wilkinson"), investigated Plaintiff's complaint.  As part of that investigation, Wilkinson spoke with both Rizzo and Janick.  Notably, although Janick had only observed Plaintiff's work for a short time, he agreed that she needed to improve her performance as indicated by the PIP, and he also indicated that some of Plaintiff's subordinates had already complained to him about her. Varino Aff. Ex. L.  From her investigation, Wilkinson determined that it was appropriate for Plaintiff to remain on the PIP.  Wilkinson further recommended, though, that upon Plaintiff's successful completion of the PIP, she be considered for a transfer to the Boston area, which is what Plaintiff had been seeking. *See*, Varino Aff. Ex. M.

Plaintiff believes that Janick was genuinely supportive and interested in helping her achieve the goals set forth in the PIP. *See, e.g.*, Pl. Dep. at pp. 136, 164.  Such point is significant, since Janick was the person responsible for deciding whether Plaintiff met the goals set forth in her PIP. Pl. Dep. at p. 133.  Nevertheless, on September 11, 2009, Plaintiff left work on disability, purportedly after she experienced work-related anxiety and panic stemming from the issuance of the PIP.

On or about October 22, 2009, while on disability leave, Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging

discrimination on the basis of age and gender. Clemens Decl., Ex. A.[6]  A few days later, on October 26, 2009, Plaintiff first complained directly to Defendant concerning alleged discrimination based on age and gender.  Specifically, she wrote to Wilkinson, and stated that Starbucks had discriminated against her, "a female partner over the age of 40."

Plaintiff returned to work for two days in late October 2009.  At that time, Janick delivered Plaintiff's annual performance review, which gave her an overall rating of "must improve." Varino Aff. ¶ ¶ 23-24 & Ex. S.  The evaluation indicated that Plaintiff had a continuing problem "connecting" with her staff. Varino Aff. Ex. S ("It is ok for a SM's [store manager's] team to reach out to the DM [district manager], but the majority of Sharon's team has reached out to the DM.  This occurrence has provided some information on Sharon's leadership.  Sharon has a vision, yet her team is not a part of it. Her team struggles to connect with her.").

Plaintiff then went back on disability leave and remained out of work through the end of 2009 and the first half of 2010.  Defendant granted Plaintiff at least seven extensions of her disability leave, until June 25, 2010.  Plaintiff then asked Defendant to extend such leave into September 2010.  In connection with that request, on July 30, 2010, Plaintiff's doctor indicated that Plaintiff could return to work in September 2010, on a part-time basis. Varino Aff., Ex. X.  On August 26, 2010, Defendant notified Plaintiff that it was denying her request for a further leave of absence, and terminating her employment, based on "continued absence from work." *Id*.  More specifically, Defendant indicated that it was terminating Plaintiff's employment because her continued absence

_____

[6]On June 8, 2010, the EEOC dismissed the complaint after its investigation did not find evidence of discrimination.

from work imposed an "undue hardship" on Defendant. Varino Aff. at ¶ ¶ 32-33.

Plaintiff believes that her termination was discriminatory because she is aware that two other employees, one male and one female, had been out on disability leave and "were allowed to return to work." Pl. Dep. at pp. 201-202. However, Plaintiff admits that she does not know "the circumstances of [those employees'] return" or "whether they had any kind of restrictions." *Id*. at p. 202. Plaintiff also believes that Defendant could have placed her in another position, since Defendant had two available "shift supervisor" positions at that time, and since another store manager was managing two stores simultaneously in Greece, New York. *Id*. at p. 203. However, Plaintiff's position was that of a full-time store manager, and she admits that placing her in a shift supervisor's position would have been a "demotion," Pl. Dep. at p. 222, and that she is not aware of Defendant having any part-time store managers. *Id*. at p. 283. In addition, the record does not indicate that Plaintiff specifically requested to be placed in any other position.

On September 7, 2010, Plaintiff commenced this action *pro se*, purporting to assert claims under Title VII, the ADEA and the ADA. On April 16, 2012, Defendant filed the subject motion for summary judgment as to all claims. On September 6, 2012, Plaintiff filed papers opposing Defendant's motion with regard to the Title VII and ADEA claims. On November 20, 2012, the parties appeared before the undersigned for oral argument.

ANALYSIS

At the outset, Plaintiff contends that summary judgment is not appropriate, since she was denied certain discovery. However, the deadline for discovery expired on February 10, 2012. Moreover, the Amended Scheduling Order [#48] issued by the Honorable Marian W. Payson, United States Magistrate Judge, indicated that "[a]ll motions to compel discovery shall be filed at least thirty (30) days prior to the factual discovery cutoff," and Plaintiff never filed a motion to compel. In addition, Plaintiff has not shown that further discovery is warranted under FRCP 56(d). Accordingly, the Court will proceed on the existing record.

### Rule 56

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317,

322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996). Once that burden has been established, the burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.[7] The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (citations and internal quotations omitted).

---

[7]It is well settled that the party opposing summary judgment may not create a triable issue of fact "merely by submitting an affidavit that disputes his own prior sworn testimony." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)(citations omitted). Rather, such affidavits are to be disregarded. *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987)(citations omitted).

Moreover, because Plaintiff is proceeding *pro se*, the Court must construe her papers liberally to raise the strongest arguments they suggest. *See, Dibbs v. Mazzarelli*, 470 Fed.Appx. 34, 2012 WL 1813671 at *1 (2d Cir. May 21, 2012).

### Plaintiff Failed to Administratively Exhaust Her ADA Claim

In the original Complaint [#1] that Plaintiff filed in this action, she checked the box indicating that she was asserting a claim under the ADA.  However, Plaintiff has now abandoned any such claim.[8]  In any event, it is clear that Defendant would be entitled to summary judgment on any ADA claim in this action, based on Plaintiff's failure to exhaust her administrative remedies as to that claim.  In that regard, it is well settled that an ADA plaintiff must exhaust her administrative remedies before commencing an action in federal court. *See, Hoffman v. Williamsville School Dist.*, 443 Fed.Appx. 647, 649, 2011 WL 5120374 at *2 (2d Cir. Oct. 31, 2011) ("[P]laintiffs asserting ADA claims must exhaust all available administrative remedies, *see, e.g., J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ.*, 278 F.3d 119, 124 (2d Cir.2002), and must file an EEOC charge within 300 days of the alleged discriminatory conduct if they have instituted proceedings with a state or local agency, *see, e.g., Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir.1999))."  Here, Plaintiff filed a discrimination complaint with the EEOC, but it alleged discrimination only on the basis of age and gender, not disability.  Moreover, the EEOC's actual investigation into Plaintiff's complaint only addressed discrimination on the basis of age and gender, not disability.  Accordingly, Plaintiff failed to administratively exhaust her ADA claim, since it was neither specifically included in her EEOC complaint

---

[8]Plaintiff did not address the ADA claim in her responsive papers, and at oral argument she indicated that she has no disability claim.

nor "reasonably related" to the claims that were included. *See, Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008) ("The exhaustion requirement is relaxed under the 'reasonably related' doctrine if, *inter alia*, the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.") (citation omitted). Accordingly, Defendant is entitled to summary judgment on the ADA claim.

### Shifting Burdens Under the McDonnell Douglas Test

The Court will now consider Defendant's motion for summary judgment on the Title VII and ADEA claims. In that regard, such discrimination claims must be analyzed using the three-tier burden-shifting test "set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny." *Valentine v.Standard & Poors*, 50 F.Supp.2d 262, 281-82 (S.D.N.Y. 1999)(Citations and internal quotations omitted), *aff'd*, 205 F.3d 1327 (2d Cir. 2000); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001), *cert den.* 534 U.S. 993 (2001). Under the first tier of the *McDonnell Douglas* test, the plaintiff must establish a prima facie case.[9] If the plaintiff establishes a prima facie case,

> the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's discharge [or other adverse employment action]. At this stage, the employer need only articulate--but need not prove-- the existence of a nondiscriminatory reason for its decision. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Once defendant meets its burden of production, the burden shifts back to plaintiff. Under the third tier of the *McDonnell Douglas* test, plaintiff bears the ultimate burden of

---

[9]It is clear that "the burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion as the prima facie stage is *de minimis*." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (emphasis in original, citation and internal quotation marks omitted).

proving that the reason proffered by the employer is a pretext for unlawful discrimination. In order to survive a motion for summary judgment, plaintiff must establish a genuine issue of material fact as to whether the employer's reason . . . is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision.

*Valentine*, 50 F.Supp.2d at 281-82 (Citations and internal quotations omitted); *see also,*

*Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003).

At the third tier of the *McDonnell Douglas* test, simply proving that the employer's proffered reason was false may, or may not, establish the required proof of discriminatory intent:

The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is correct. In other words, it is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.

*James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000) (*quoting Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2108-09 (2000)). In this regard, "[t]he relevant factors . . . include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports or undermines the employer's case." *Id*. (internal quotation marks omitted).

Where the employer's proffered reason is that the employee's job performance was unsatisfactory, the employee's opinion to the contrary, by itself, is insufficient to raise a triable issue of act as to pretext. *See, Shabat v. Billotti*, No. 96–7638, 1997 WL 138836 at *2 (2d Cir. Mar. 18, 1997) ("[T]he fact that an employee disagrees with an employer's evaluation of him does not prove pretext.") (unpublished, citation omitted);

*Iverson v. Verizon Communications*, No. 08 Civ. 8873(SAS), 2009 WL 3334796 at *5

(S.D.N.Y. Oct. 13, 2009) ("Merely disagreeing with a supervisor's assessment of work

performance, however, is insufficient to raise a triable issue of fact regarding pretext.")

(citation and internal quotation marks omitted); *Hines v. Hillside Children's Ctr.*, 73

F.Supp.2d 308, 315 (W.D.N.Y. 1999) ("In opposition to defendant's motion, Hines to a

great extent simply argues that his performance was not deficient. That is not enough,

however, to defeat a well-founded motion for summary judgment. An employee's

subjective opinion about his own qualifications is insufficient to give rise to a triable issue

of fact concerning whether the employer's proffered reason for its actions is a pretext for

discrimination.").  This principle applies even where the Plaintiff previously received

favorable performance reviews. *See, Hines v. Hillside Children's Ctr.*, 73 F.Supp.2d at

315-316 ("Hines notes that prior to 1991, his evaluations had generally been good.

However, prior good evaluations alone cannot establish that later unsatisfactory

evaluations are pretextual. To hold otherwise would be to hold that things never change,

a proposition clearly without a basis in reality.") (citation and internal quotation marks

omitted); *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) ("In *Viola [v.

Phillips Med. Sys.*, 42 F.3d 712, 718 (2d Cir. 1994], we held that the fact that an

employee first received an adverse review on the eve of a reduction in force did not, on

its own, suffice to make out a showing of pretext. Such an occurrence, we concluded,

could not, on its own, be transformed into the predicate for a discrimination suit.").

<u>Plaintiff Cannot Establish Discrimination Under the ADEA or Title VII</u>

To establish a prima facie case of discrimination under either the ADEA[10] or Title VII, a plaintiff must show four things: "(1) that he was within the protected . . . group, (2) that he was qualified for the position, (3) that he experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Spataro v. Glenwood Supply*, 479 Fed.Appx. 403 (2d Cir. Oct. 4, 2012) (*quoting Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir.2010) *and also citing Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001)) (internal quotation marks omitted).

Defendant contends that Plaintiff cannot show that she suffered an adverse employment action, since the denial of a transfer to a lateral position within a company is not an adverse employment action.  However, even assuming *arguendo* that Plaintiff has satisfied the low threshold showing of an adverse employment action, and that she can also establish the first two elements of a prima facie case, she still must show that the adverse actions occurred under circumstances giving rise to an inference of age/gender discrimination.

Plaintiff maintains that she suffered discrimination in connection with her application for the Rhode Island position.  In that regard, to the extent Plaintiff contends that it was discriminatory for Rizzo not to provide her with a written letter of

---

[10] "Under the ADEA, in addition to showing that the defendant discriminated against him or her on the basis of age, the plaintiff must also show that age discrimination was a "but-for" cause of the adverse action, and not merely one of the motivating factors." *Castellanos v. Montefiore Medical Center*, No. 09 Civ. 9400(LAP),  2012 WL 4471573 at *5 (S.D.N.Y. Sep. 27,  2012)) (*citing Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)).

recommendation, the Court disagrees.  Plaintiff has not shown that Rizzo gave written, or more favorable, recommendations, to any similarly situated employee who was male or younger than Plaintiff.  Moreover, to the extent that Plaintiff contends it was discriminatory not to hire her for the Rhode Island position, she cannot show that such decision was discriminatory on the basis of gender, since a female was hired.  Even assuming that Plaintiff could make out a prima facie case of age discrimination, she has not come forward with evidence that Defendant's proffered reason was pretextual. That is, she has offered no evidence that the reasons Kronsberg gave for her hiring decision were false, or that Kronsberg was motivated by discriminatory animus.

As for the Massachusetts position, assuming *arguendo* that Plaintiff could establish a prima facie case, she has not shown that Defendant's proffered reason is pretextual.  In that regard, Defendant maintains that Plaintiff was not permitted to apply for the position because she was not performing satisfactorily at the Marketplace Mall location.  Plaintiff contends that this explanation is pretextual, since Robbins never told her, during the several months that she worked at Marketplace, that she needed to improve her performance.  However, as discussed above, Plaintiff's subjective belief that she was performing satisfactorily, by itself, is not sufficient to create a triable issue of fact as to pretext.  In any event, there is evidence in the record indicating that Plaintiff's performance was deficient in certain respects.  Furthermore,  regardless of how Robbins felt, the record indicates that Smith, who was Plaintiff's Regional Director and Robbins' supervisor, was unhappy with Plaintiff's job performance.

Similarly, Plaintiff cannot show that the issuance of the PIP/final warning was pretextual. On this point, Plaintiff contends that the PIP/final warning was unfair and "came from nowhere." Pl. Dep. at 26. However, in making that claim, Plaintiff again relies solely on the fact that Robbins did not criticize her performance during the three months that she worked for him, while ignoring the performance issues that Rizzo had identified during the previous nine months.

Additionally, even assuming that Plaintiff could show that these proffered reasons are false, she has not shown that the real reason was based on any kind of discriminatory animus. Plaintiff contends that during the two years surrounding the complained-of employment decisions, several employees were terminated or demoted who were either female or over the age of forty. However, Plaintiff has not shown that those incidents are sufficiently comparable to permit a reasonable juror to conclude that Starbucks has a discriminatory bias against females and persons over the age of forty. *See, Smith v. New Venture Gear, Inc.*, 320 Fed. Appx. 33, 36, 2009 WL 910230 at *2 (2d Cir. Apr. 6, 2009) ("Davis does not provide evidence that black workers received more serious punishment than white workers generally. He cites an example of a white co-worker who threatened to bring a gun into work and was suspended for three months, two months longer than Davis was suspended. He also attempts to draw a comparison between discipline for altercations involving black and white co-workers and that imposed for altercations between white co-workers. However, Davis fails to provide enough evidence that these incidents are sufficiently comparable to permit a reasonable factfinder to determine that NVG disciplined employees disparately on the basis of race."). For example, Plaintiff was not terminated or demoted, but was placed on a PIP

that gave her an opportunity to improve her performance and retain her position.

Moreover, although Defendant eventually terminated Plaintiff's employment, it was under

circumstances that were entirely different than those of the other employees that she

cites.

*Retaliation*

Lastly, the Court finds that Plaintiff cannot maintain her retaliation claim. On this

point, the legal principles for retaliation claims are clear:

> "Retaliation claims . . . are evaluated under a three-step burden-shifting
> analysis." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d
> Cir.2005); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792,
> 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must
> establish a prima facie case of retaliation by showing: " '(1) participation in
> a protected activity;[11] (2) that the defendant knew of the protected activity;
> (3) an adverse employment action;[12] and (4) a causal connection between
> the protected activity and the adverse employment action.' " *Jute*, 420 F.3d
> at 173 (*quoting McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d
> Cir.2001)). The plaintiff's burden in this regard is " de minimis," and "the
> court's role in evaluating a summary judgment request is to determine only
> whether proffered admissible evidence would be sufficient to permit a
> rational finder of fact to infer a retaliatory motive." *Id.* (internal quotation
> marks omitted).
>
> If the plaintiff sustains this initial burden, "a presumption of retaliation
> arises." *Id.* The defendant must then "articulate a legitimate, non-retaliatory
> reason for the adverse employment action." *Id.* If so, "the presumption of
> retaliation dissipates and the employee must show that retaliation was a
> substantial reason for the adverse employment action." *Id.* A plaintiff can

---

[11]It is well settled that "[t]he term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d cir. 2000). In deciding whether a particular activity amounts to "protected activity," "the employment practices opposed by the plaintiff need not have actually amounted to a violation of Title VII. Rather, the plaintiff must have had a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir. 2001).

[12]To make a prima facie showing of an adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d at 207 (*quoting Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2415 (2006)).

> sustain this burden by proving that "a retaliatory motive played a part in the
> adverse employment actions even if it was not the sole cause[;] if the
> employer was motivated by retaliatory animus, Title VII is violated even if
> there were objectively valid grounds for the [adverse employment action]."
> *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990).

*Hicks v. Baines*, 593 F.3d 159, 164-165 (2d Cir. 2010).

Here, although Plaintiff can establish the first three elements of a prima facie

case, she has not established the fourth. That is, Plaintiff has not come forward with

sufficient evidentiary proof in admissible form to show that there was a causal

connection between her protected activity (complaining to Wilkinson about discrimination

and filing an EEOC Complaint) and the termination of her employment ten months

later.[13] In that regard, the Court finds that there is not sufficient temporal proximity to

establish a causal nexus. *See, Cifra v. G.E. Co.*, 252 F.3d 205, 217 (2d Cir. 2001)

("The causal connection needed for proof of a retaliation claim can be established

indirectly by showing that the protected activity was closely followed in time by the

adverse action.") (citation and internal quotation marks omitted). Nor has Plaintiff shown

that any similarly-situated person (who had been on extended disability leave and was

unable to return to her usual position) who had not engaged in protected activity was

treated differently than she was.

CONCLUSION

Defendant's motion for summary judgment [#51] is granted and this action is

dismissed. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal

---

[13]On or about October 26, 2009, Plaintiff first complained to Defendant concerning discrimination based on age and gender. Specifically, she wrote to Beth Wilkinson and stated that Starbucks had discriminated against her, "a female partner over the age of 40." Ten months later, on August 27, 2010, Defendant terminated Plaintiff's employment. Apart from the termination of Plaintiff's employment, the Complaint ([#1]& [#4]) does not identify any arguably-retaliatory actions.

from this Order would not be taken in good faith and leave to appeal to the Court of

Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

Further requests to proceed on appeal *in forma pauperis* should be directed on motion to

the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of

the Federal Rules of Appellate Procedure.

     SO ORDERED.

Dated: Rochester, New York
    December 19, 2012

                                        ENTER:


                                        /s/ Charles J. Siraugsa____
                                       CHARLES J. SIRAGUSA
                                       United States District Judge